# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

STEPHEN M. GARRISON,

                Petitioner,              :      Case No. 2:18-cv-1152

     - vs -                         District Judge Algenon L. Marbley
                                            Magistrate Judge Michael R. Merz

DAVID GRAY, Warden,
  Belmont Correctional Institution,

                                  :
                Respondent.

---

# SUBSTITUTED REPORT AND RECOMMENDATIONS

---

This habeas corpus case was brought by Petitioner Stephen M. Garrison *pro se* pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction in the Muskingum County, Ohio, Court of Common Pleas on February 15, 2017 (Petition, ECF No. 3, PageID 37, ¶¶ 1-2). On order of Magistrate Judge Kimberly Jolson (ECF No. 2), the Respondent has filed the State Court Record (ECF No. 7) and a Return of Writ (ECF No. 8). The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the workload in the District (ECF No. 13). Petitioner filed a Reply (ECF No. 14), making the case ripe for decision.

**Litigation History**

Garrison was indicted by a Muskingum County, Ohio, grand jury on one count of domestic violence with the specification that he had two or more prior domestic violence convictions

1

(Indictment, State Court Record, ECF No. 7, PageID 69).  Convicted by a trial jury, he was sentenced to thirty-six months imprisonment.  He took a direct appeal to the Ohio Court of Appeals, which affirmed the conviction and sentence.  *State v. Garrison*, Muskingum No. CT2017-18, 2018-Ohio-463, ¶¶ 6, 8, 64 (Ohio App. 5th Dist. Feb. 2, 2018).  Garrison did not timely appeal to the Supreme Court of Ohio, and that court denied his motion for delayed appeal.  *State v. Garrison*, 153 Ohio St. 3d 1429, 2018-Ohio-2418.  Garrison next filed his Petition in this Court, pleading the five grounds for relief discussed below.  (Petition, ECF No. 3.)

The Petition contains extensive pleading of supporting facts which are reproduced below with the Ground for Relief to which they pertain.

# Analysis

## Procedural Default for Failure to Timely Appeal to the Supreme Court of Ohio

Respondent asserts all of Garrison's five grounds for relief are barred by his procedural default in failing to present them to the Supreme Court of Ohio in a timely direct appeal (Return of Writ, ECF No. 8, PageID 600, *et seq*.).  Garrison responds that he "will not only demonstrate cause for any perceived default and actual prejudice, but additionally, will demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  (Traverse, ECF No. 14, PageID 657.)

In the initial Report and Recommendations filed in this case, the Magistrate Judge recommended upholding the Warden's procedural default defense on the basis of this particular default (ECF No. 19).  That Report was filed after receiving materials filed by the Warden in

response to the Court's Order to Expand the Record (Order, ECF No. 15; Warden's Response, ECF No. 18), but before receiving materials tendered by Petitioner in reaction to that Order (ECF Nos. 20, 21). Only the Warden was ordered to expand the record, but the Magistrate Judge believes in fairness the Court should consider Petitioner's responsive materials.

The materials added by expansion relate to whether Garrison's failure to timely file in the Supreme Court of Ohio is to be excused by failure of prison personnel to mail his appeal in time. The conflicting affidavits filed on this issue present a factual dispute which cannot be resolved on paper affidavits because resolution would depend on a credibility determination. Because procedural default in this case is a federal question on which the state courts did not develop a factual record, this Court is not precluded from hearing evidence by *Cullen v. Pinholster*, 563 U.S. 170 (2011). However, conducting such a hearing would waste scarce judicial resources as it would require issuance of writs of habeas corpus *ad testificandum* for Petitioner and his inmate witness as well as requiring the testimony of several prison employees. The Magistrate Judge believes the issue of procedural default based on failure to appeal to the Supreme Court of Ohio can, in the interest of judicial economy, be set to one side and the case resolved on the merits and/or on procedural default defenses on other bases.

# Analysis

## Ground One: Improper Admission of Photographs

Petitioner pleads his First Ground for Relief as follows:

**Ground One:**  The trial court erred by admitting State's Exhibits one (1) through five (5) in violation of Evid. R. 402 and 403, and in violation of equivalent and corresponding Federal Rules 402 and 403, as these exhibits did not accurately depict the contents purported and is a violation of Petitioner's right to a fair and impartial trial.

**Supporting Facts:**  The State's Exhibits One (1), Two (2), Three (3), Four (4) and Five (5) were declared by the State to depict the alleged victim's speculative injuries, that of Nikki Dickinson. These photographs were taken by Deputy Hamilton while he was at the scene of the alleged domestic violence call.

Deputy Hamilton testified at trial. As these exhibits did not depict any injuries whatsoever, Deputy Hamilton testified that what he saw visually on scene is not depicted in the photographs and went on to state that he observed substantial injuries.

Defense Counsel objected to the admission of these photographs as exhibits.  The trial court ruled and admitted the photographs, it specified the accuracy would have to be argued (Trial, Vol. I, P. 237).

The trier of fact, here - the jury - weighs heavily the testimony of law enforcement officials.  The deputy testified that he visually saw injuries that were not present in the photographs. The photographs should not have been admitted as they violation Evid. R. 402 which states that "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible." And Evid. R. 403 which states that "(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

The Appellate Court determined that there was no prejudice to the Defendant in admitting these exhibits into the record.

However, Evid. R. 402 and 403 does [sic] not state that there must be prejudice, there are two other exclusions to these rules where there is confusion of the issues and misleading the jury. Clearly, the admission of this evidence would mislead jurors.

4

> There is a conflict that is unresolved as it relates to this issue. The trial judge even acknowledged that this would be a contentious issue leaving it to be argued on appeal.

(Petition, ECF No. 3, PageID 42.)

The Warden defends on the merits of Ground One by asserting that questions of the admission of evidence raise state evidentiary law questions which are not cognizable in habeas corpus (Return, ECF No. 8, PageID 612-15).

Garrison responds generally that the photographs were misleading precisely because the jury would have to wonder why Deputy Hamilton took the photographs. (Traverse, ECF No. 14, PageID 673-77.)

Both parties agree that the relevant law is summarized in *Wilson v. Sheldon,* 874 F.3d 470 (6th Cir. 2017), where the court held:

> With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir. 2001). Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)). Even if errors are made in the application of state law, "[such] errors . . . especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 962, 104 S. Ct. 396, 78 L. Ed. 2d 338 (1983). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman*, 244 F.3d at 542). Importantly, however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S. Ct. 2013, 135 L. Ed. 2d 361

(1996)). Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause. *Id*.

874 F. 3d at 475-76. Fundamentally, a federal habeas court does not sit as a court of appeals with respect to state court rulings on questions of state law. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J., concurring).

The question of whether a piece of evidence is admissible under Ohio R. Evid. 402 or excludable under Ohio R. Evid. 403 is a question of Ohio law, not federal law, much less federal constitutional law. Thus, Petitioner's pleading that admission of these exhibits violates Fed. R. Evid. 402 and 403 is not an issue in habeas corpus because those rules do not apply to state court trials.

On appeal Garrison asserted as his First Assignment of Error

> THE TRIAL COURT ERRED BY ADMITTING STATE'S EXHIBITS ONE THROUGH FIVE SINCE THE PHOTOGRAPHS DID NOT ACCURATELY DEPICT THE CONTENTS IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL.

*State v. Garrison*, 2018-Ohio-463 (5th Dist. Feb. 2, 2018).

> **[\*P9]** Appellant argues the court erred in admitting the photographs of N.D. taken at the scene by Deputy Brandon Hamilton because the testimony established they did not accurately depict N.D.'s injuries.

**[\*P10]** Evid. R. 901(A) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Accordingly, a photograph is admissible in evidence if it is shown to be an accurate representation of what or whom it purports to represent. *State v. Hannah*, 54 Ohio St.2d 84, 88, 374 N.E.2d 1359, 1362-63 (1978). "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Evid. R. 1003.

**[\*P11]** The photographs admitted into evidence were copies of the original photographs taken by Deputy Hamilton. Dep. Hamilton initially testified the photographs were a fair and accurate depiction of N.D. on the night in question. Tr. 193. However, he later noted the photographs did not show the tea he observed on her shirt, and did not depict the scratch. Tr. 194,195.

**[\*P12]** On cross-examination, the deputy testified the copies were not as clear as the photographs he took because they were missing the stains on her shirt and the scratch on her stomach, and the bruise on her arm appeared darker in real life than on the copy of the photograph. Tr. 204, 207. He testified the pictures were accurate, but the quality was not good. Tr. 205. However, on further questioning, he testified the photos were not an accurate depiction of what she looked like on the night in question. Tr. 206. Finally, on redirect examination, he testified the photographs were not as clear as what they should be. Tr. 219.

**[\*P13]** Appellant objected to admission of the photographs on the basis they were not accurate. The court admitted the photographs, stating, "The accuracy will have to be argued." Tr. 237.

**[\*P14]** Unless the defendant has been materially prejudiced by the improper admission of evidence, an appellate court should not disturb the decision of the trial court. *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240 (2002). Assuming arguendo admission of the photographs was error, Appellant has not demonstrated prejudice from their admission. The deputy testified the photographs did not accurately depict the extent of her bruising, nor the existence of tea on her shirt and a scratch on her stomach. Admission of photographs depicting less serious and fewer injuries than those testified to by N.D. was not prejudicial to Appellant's case, and Appellant has not demonstrated prejudicial error.

7

[**\*P15**]  The first assignment of error is overruled.

*Id.*  In his Brief on appeal, Garrison did not argue the admission of these photographs was a violation of Ohio Evid. R. 402 or 403.  Instead counsel argued they were not properly authenticated under Ohio R. Evid. 1003 and generally that their admission was prejudicial (State Court Record, ECF No. 7, Ex. 8).

One way to interpret the Fifth District's decision is that the federal constitutional question was not fairly presented to it – no federal case law or constitutional provision was cited, for example.  However, the Warden has not raised the defense of lack of fair presentation.  The other way to look at the Fifth District's decision is to see its lack-of-prejudice ruling as essentially deciding the due process question Garrison raises:  was he deprived of due process and a fair trial by admission of these photographs?  As *Wilson, supra,* emphasizes, it is only when a state evidentiary error rises to the level of a denial of due process that it constitutes a federal constitutional violation.  Because that would be a fair reading of the Fifth District's decision and allows this Court to reach the merits of Garrison's First Ground for Relief, the Court will adopt that reading.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100(2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Fifth District's decision that admission of the photographs resulted in no prejudice to Garrison amounts to a conclusion that their admission did not deny him a fair trial.[1] Viewed from a constitutional perspective, the Magistrate Judge agrees. Photographs that depict less severe injuries than the photographer saw and testified to would not prejudice a defendant. Instead, they would tend to undermine the photographer's testimony, especially here where the photographer was also the investigating law enforcement officer. Garrison does not contradict the Fifth District's finding that, as Deputy Hamilton admitted on cross-examination, the photographs show less severe injuries than he testified to. Garrison has pointed to no Supreme Court precedent holding admission of photographs of that sort violates the Due Process or Fair Trial Clauses.

Garrison's First Ground for Relief should be denied on the merits.

**Ground Two: Failure to Instruct on Disorderly Conduct as a Lesser Included Offense or on Self-Defense**

Garrison pleads his Second Ground for Relief as follows:

> **GROUND TWO:** THE TRIAL COURT VIOLATED PETITIONER'S RIGHTS PROTECTED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO DUE PROCESS AND THE RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT NEGLECTED TO PRESENT THE JURY WITH JURY INSTRUCTIONS.NAMELY, THE LESSER INCLUDED OFFENSES [SPECIFICALLY, DISORDERLY CONDUCT] AND SELF-DEFENSE WHEN THE EVIDENCE AT TRIAL WARRANTED BOTH.

> **Supporting Facts:** The evidence presented at trial warranted the trial court to provide jury instructions of the lesser included offense of disorderly conduct and self-defense.

> The trial court, however, neglected to do so.

---

[1] Technically, admission of photographs that were prejudicial enough to be excluded under Ohio R. Evid. 403 might not be so prejudicial as to violate the guarantee of a fair trial, but, conversely, a decision that the photographs were not prejudicial at all implies, *a fortiori*, that their admission did not violate due process.

On appeal, Garrison addressed this issue and the appellate court reviewed this for plain error. The Appellate Court overruled this assignment of error.

At the time of the incident, Garrison was living with the alleged victim, Nikki Dickinson. It was established at trial and a review of the record clearly indicates that Nikki assaulted Garrison. Garrison withstood the brunt of this assault. In the course of the altercation, Garrison shielded himself but did not engage her by fighting back. Often times, when an altercation such as this occurs, the one who is guarding his or her self from the attack can inadvertently inflict unintentional damage to the aggressor, such as scrapes, bruises, or cuts [from nails, blocking motions from the hands, etc ... ].

Disorderly Conduct as defined by R.C. 2917.11 (A)(l) states that "No person shall recklessly cause inconvenience, annoyance, or alarm to another by ... [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]" This R.C. does not state that there has to be physical contact between the two parties. The statute simply states that no person shall recklessly cause inconvenience, annoyance or alarm to another ... by definition, this is what occurred between Garrison and Nikki, not Domestic Violence.

Domestic Violence is defined as, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Garrison did not cause or attempt to cause physical harm to Nikki, it was Nikki who was the aggressor and attacked Garrison. A review of the record clearly reflects this.

Moreover, Garrison was entitled to an affirmative defense of self-defense. As Garrison explained above, while defending oneself there are known instances where the aggressor inadvertently receives physical harm.

The trial court erred when it neglected to give the jury instruction to the trier-of-fact. This is a clear violation of Garrison's Sixth and Fourteenth Amendments to Due Process and the right to a Fair Trial.

(Petition, ECF No. 3, PageID 45.)

The Warden defends Ground Two on the basis that it was procedurally defaulted by failure to make a contemporaneous objection to the instructions and that Supreme Court precedent does

not establish any entitlement to lesser included offense instructions under the facts of this case (Return, ECF No. 8, PageID 615-22.)

Petitioner acknowledges that a jury instruction error "must be [so] egregious that it renders the entire trial fundamentally unfair."  (Traverse, ECF No. 14, PageID 677.)  He proceeds, however, to cite case law pertaining to jury instructions that should be given by a federal judge presiding over a trial, rather than situations in which habeas courts have found constitutional violations relating to jury instructions.  *Id.* at PageID 678-79.  He criticizes the Fifth District for only analyzing his lesser included offense claim under Ohio Revised Code § 2917.11(A)(1) rather than what he claims are other available disorderly conduct offenses.  *Id.* at PageID 679-83.  He then elaborates on his claim that he should have been allowed a self-defense instruction.  *Id.* at PageID 683-86.

Garrison's presentation of these issues on direct appeal was his second assignment of error which the Fifth District decided as follows:

> **[\*P16]** In his second assignment of error, Appellant argues the trial court committed plain error in failing to instruct the jury on the lesser-included offense of disorderly conduct and the defense of self-defense.
>
> **[\*P17]** Appellant concedes he did not request an instruction on the lesser-included offense of disorderly conduct or on self-defense. Failure to object before the jury retires, absent plain error, constitutes waiver. *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990). The Ohio Supreme Court has recently clarified the standard of review for plain error:
>
>> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that

constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002 Ohio 68, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Thomas*, 2017-Ohio-8011, ¶¶ 32-34, 152 Ohio St. 3d 15, 92 N.E.3d 821.

**[\*P18]** A trial court is required to instruct on a lesser-included offense only where the evidence at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986.

**[\*P19]** Appellant argues he was entitled to an instruction on the lesser-included offense of disorderly conduct as defined by R.C. 2917.11(A)(1), "No person shall recklessly cause inconvenience, annoyance, or alarm to another by...[e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]" He was convicted of domestic violence in violation of R.C. 2919.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**[\*P20]** Appellant argues it is uncontroverted N.D. punched him in the throat and grabbed his groin, which fits in the definition of

fighting. However, he testified he did not engage in fighting, and simply withstood her attack. Therefore, the evidence does not reasonably support an acquittal of domestic violence and a conviction upon the lesser included offense of domestic violence. Appellant has not demonstrated plain error in the court's failure to sua sponte instruct the jury on disorderly conduct.

[*P21] Appellant also argues the court committed plain error in failing to instruct the jury on self-defense. In order to establish the affirmative defense of self-defense, the Appellant generally has to show three elements: (1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979).

[*P22] In *State v. Perry*, 5th Dist. Richland No. 02-CA-77, 2003-Ohio-6097, the defendant argued the court erred in failing to instruct the jury on self-defense in his domestic violence prosecution. However, he testified at trial he never hit her. We accordingly found no error in refusing to give the self-defense instruction. *Id.* at ¶27. Likewise, we find no plain error here in the court's failure to instruct the jury on self-defense as Appellant testified he did not touch N.D.

[*P23] The second assignment of error is overruled.

*State v. Garrison*, 2018-Ohio-463.

Respondent asserts this Ground for Relief is procedurally defaulted. This is apart from his general defense of procedural default for failure to timely appeal to the Supreme Court of Ohio. Instead, this defense as to Ground Two is for lack of a contemporary objection.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Engle v. Isaac*, 456 U.S. 107, 110 (1982); *Wainwright v. Sykes*, 433 U.S. 72 (1977). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (quoting *Gravley v. Mills*, 87 F.3d 779, 784 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman*, 501 U.S. at 731-732, 111 S. Ct. 2546, 115 L. Ed. 2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies

are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*, 433 U.S. 72; accord: *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (citations omitted). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan,* 526 U.S. at 846-47); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]"). The corollary to this rule is that where a petitioner raised a claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on procedural basis and petitioner's complete failure to raise a claim in state court are the two ways a claim can be in procedural default).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden., S. Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th

Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord *Lott v. Coyle*, 261

F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent
> state ground, then the petitioner must demonstrate under *Sykes* that
> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), quoting

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  A habeas petitioner can overcome a

procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins

v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).  Garrison does not argue in his Traverse in rebuttal

of this particular asserted procedural default; his response on procedural default is limited to his

argument about his appeal to the Supreme Court of Ohio (Traverse, ECF No. 14, PageID 657-73.)

Applying here the analysis required by *Maupin, supra,* the Fifth District's opinion

establishes that there is a relevant Ohio procedural rule:  if no objection is lodged to the instructions

before the jury retires, any objection is forfeited.  *Garrison* at ¶ 17, citing *State v. Williford*, 49

Ohio St.3d 247 (1990).  The Fifth District, the last state court to consider this claim of error,

enforced the rule against Garrison by reviewing only for plain error.  Review on that basis does

not waive the procedural default; the Sixth Circuit has held plain error review is an enforcement of the default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003). This rule is independent of federal law and is adequate in that, like the broader contemporaneous objection rule, it enables a trial court to correct error before wasting the entire trial on an error that can be corrected. Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), citing *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), citing *Engle v. Isaac*, 456 U.S. 107, 124-29 (1982). See also *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011).

Garrison has not attempted to show excusing cause and prejudice as to this default. As to procedural default generally, Garrison claims entitlement to the "miscarriage of justice" exception to procedural default (Reply, ECF No. 14, PageID 672-73). His asserted basis for application of

this exception is that he is innocent of the crime for which he was convicted. "The miscarriage of justice standard" may not be met "in the absence of a strong showing of actual innocence." *Calderon v. Thompson*, 523 U.S. 538, 557-58 (1998). In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995). Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Id*. at 590 (footnote omitted). Garrison has produced no new evidence of the sort contemplated by *Souter* and *Schlup*, and thus is not entitled to excuse his procedural default in this way. Ground Two is therefore procedurally defaulted.

Moreover, Ground Two is without merit. As Respondent points out, the Supreme Court has never held that the Constitution requires giving a lesser included offense instruction in a non-capital case. (Return, ECF No. 8, PageID 616, citing *McMullan v. Booker*, 761 F.3d 662 (6th Cir. 2014). See also *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990). Therefore, failure to give an instruction on a lesser included offense

18

could not be an objectively unreasonable application of clearly established Supreme Court precedent.

The right to assert self-defense is a fundamental right and failure to give an instruction on self-defense when the evidence warrants it deprives a defendant of due process. *Taylor v. Withrow,* 288 F.3d 846 (6th Cir. 2002)(Merritt, J.). However, as the Fifth District held, the evidence here did not warrant a self-defense instruction because Garrison testified that he "did not touch N.D." *Garrison*, 2018-Ohio-463 at ¶ 22. If true, this meant the evidence did not come within the three elements of self-defense under Ohio law:

> In order to establish the affirmative defense of self-defense, the Appellant generally has to show three elements: (1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat.

*Id.* at ¶ 21, citing *State v. Robbins*, 58 Ohio St.2d 74 (1979). Garrison relies on *Martin v. Ohio,* 480 U.S. 228 (1987), but it actually undermines his position. Ohio Revised Code § 2901.05(A) places the burden on a defendant to prove self-defense by a preponderance of the evidence. *Martin* held allocating the burden of production and proof in that way is constitutional. Garrison's testimony was that he did not touch N.D.. That is not testimony which supports a defensive touching, but rather no touching at all.

Ground Two is procedurally defaulted by failure to make a contemporaneous objection to the instructions. It is also without merit and should be dismissed.

**Ground Three: Ineffective Assistance of Trial Counsel**

Garrison pleads his Third Ground for Relief as follows:

**GROUND THREE:**  PETITIONER'S [sic] WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN DIRECT VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND MADE APPLICABLE TO THE STATES THROUGH THE FOURTEENTH AMENDMENT; IN VIOLATION OF ARTICLE 10, SECTION I OF THE OHIO CONSTITUTION.

**Supporting Facts:**  There are multiple instances of ineffective assistance of trial counsel in this case. While it is often held that a properly licensed attorney is typically presumed competent, it is further stated that this representation is viewed under the microscope of meeting or not meeting an "objective standard of reasonable representation". Once this analysis is complete, it is further magnified by "but for counsel's error, the result of the proceedings would have been different".

This standard, known collectively as the "Strickland Standard'" that has been followed since 1984 is highly arbitrary, subjective and capricious.

In breaking down the first component of "objective standard of reasonable representation" we must examine the two variable and inconsistent words of 'objective' and 'reasonable'. Objective by definition means impartial, real or object... or neutral, factual and intent which leaves this term widely open to interpretation. Thus, what one person may deem to be objective another might determine otherwise.

Moreover, the term 'reasonable' is exceedingly subjective. In examining some of the more well[-]known legal definitions of this term, we can examine:

> REASONABLE CERTAINTY, OR REASONABLE MEDICAL CERTAINTY:
> descriptive of the quality of proof necessary to authorize recovery for permanent personal injuries; a qualified medical opinion, *based on reasonable probability*, which takes the fact of damages out of the area of speculation.

> REASONABLE CARE, OR ORDINARY CARE:
> an *imprecise* term for the conduct of a reasonably prudent person under similar circumstances.

> REASONABLE TIME:

any time fixed by agreement, *which is not manifestly unreasonable*. What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action. U.C.C. § 1-204(1), (2).

REASONABLE DOUBT:
a doubt based on reason which arises from the evidence or lack of evidence. (2) The state of mind of jurors in which, after the comparison and consideration of all the evidence, they cannot say that they feel an abiding conviction to a *moral certainty of the truth* of a criminal charge against a defendant.

REASONABLE MAN:
a person exercising those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests and the interests of others. A *fictitious person* who is never negligent, and whose conduct is always up to standard. Restatement (Second) of Torts§ 283, Comments b & c.

(*Emphasis added*.)

Collectively, the canon of legal definitions describe "reasonable" as imprecise and fictitious.

While this standard leaves a lot to be desired, even a holding of this standard, would hold that Garrison's counsel was ineffective. There are known instances where counsel falls below this standard because of over bearing, aggressive, and heavy workloads or a breakdown in communication between the attorney and the client, despite the fact that they are "properly licensed".

Garrison's attorney, Priya D. Tamilarasan, (hereinafter, "Priya") in her own words wrote to Garrison and stated that, "At this point, I believe that we have irreconcilable differences that has deteriorated our attorney-client relationship to the point that I cannot adequately continue to represent you." Thus, prompting her to file a motion to withdraw - which was denied by the trial court. Just prior however, she revealed something more telling of her performance standard for this case when she said, "First and foremost, please understand that I have not been separately retained or paid for this case." First and foremost, she stated a warning to Garrison that because she had not been retained or paid for this case it was thusly she could not adequately continue to represent him." This is extremely revealing

21

and insightful as it relates to her performance and duty as an attorney representing Garrison.

Garrison contends that Priya's performance fell below an objective standard and because of this insignificant execution of her sworn duty the outcome of this trial malfunctioned resulting in Garrison's subsequent conviction.

On direct appeal Garrison argued no less that ten (10) separate reasons in which Priya abandoned this duty. Had Priya diligently performed her duties as a competent attorney, the outcome of this trial would have been vastly different. The Appellate District Court line-itemized each of these errors and found that they did not trigger reversal. The Appellate Court neglected to consider the cataloging of these errors collectively. Thus, their determination as to ineffective assistance of counsel is invalid and should be deemed unenforceable.

(Petition, ECF No. 3, PageID 48-49.)

Respondent argues that the cumulative error portion of this Ground for Relief is procedurally defaulted because never fairly presented to the Fifth District Court of Appeals.  As for the individual sub-claims of ineffective assistance of trial counsel, Respondent claims the Fifth District's decision is entitled to deference under Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA")(Return, ECF No. 8, PageID 623-32).

Garrison argues the merits of Ground Three in his Traverse at length (ECF No. 14, PageID 686-701.  He makes no response to the defense that a cumulative ineffectiveness claim was not presented to the state court.

The Fifth District considered Garrison's claim of ineffective assistance of trial counsel as his Third Assignment of Error and decided that assignment as follows:

> [*P24] In his third assignment of error, Appellant argues his trial counsel was ineffective.
>
> [*P25] A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel,

22

appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

[**P26**] Appellant first argues counsel was ineffective in failing to tell the jury during voir dire or opening statement they must acquit if the State failed to prove any element of the offense. The trial court instructed the jury, "The Defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense charged in the indictment." Tr. 347. A jury is presumed to follow the instructions given it by a trial judge. *E.g., State v. Garner*, 74 Ohio St.3d 49, 1995-Ohio-168, 656 N.E.2d 623. Therefore, Appellant has not demonstrated if counsel had raised this issue to the jury during voir dire or opening statement, the result of the proceeding would have been different.

[**P27**] Appellant next argues counsel was ineffective in failing to follow up regarding witness Phil Smith's testimony he was confused as to how the victim would have a bruise so quickly after the incident. Appellant argues instead of giving up after the court sustained objections on the basis of foundation and speculation, counsel should have attempted to lay a proper foundation regarding Smith's knowledge of bruising. He argues the error became more prejudicial when counsel failed to object to testimony from Deputy Hamilton regarding his opinion the bruise appeared to be fresh. The record does not demonstrate had counsel questioned Smith further, she would have been able to lay a foundation for Smith to express an opinion the bruise did not appear fresh. Appellant has not demonstrated prejudice.

[**P28**] Appellant argues counsel failed to file a motion for appointment of a medical expert to review the photographs. Appellant concedes we have no way of knowing if the opinion of an appointed medical expert would be favorable to him or prejudicial to him, and therefore he has not demonstrated a reasonable probability of a change in the outcome had counsel sought appointment of an expert.

[**P29**] Next Appellant argues counsel erred in continuing to cross-examine Deputy Hamilton regarding the accuracy of the

photographs after eliciting testimony the pictures did not accurately depict the injuries. He specifically argues the following question was ineffective:

> Q: Are you asking the jury to believe your testimony over what is depicted in those photographs in your hand?
>
> A: I would just like to see better quality photographs, is all I'm saying. Tr. 208.

[*P30] The question followed counsel's cross-examination of the officer concerning whether he could recall independently what N.D.'s bruises looked like when he had responded to about 150 calls after this incident. Appellant further argues counsel engaged in unnecessary cross-examination of Deputy Hamilton regarding his experience with bruising and his memory of the appearance of the scratch on her stomach. He argues this allowed the jury to hear cumulative evidence which bolstered the State's case.

[*P31] Trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters. *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005-Ohio-3108, ¶ 26. As such, decisions regarding cross-examination cannot form the basis for a claim of ineffective assistance of counsel. *Id.* Appellant has not demonstrated counsel was ineffective in the cross-examination of Deputy Hamilton.

[*P32] Appellant argues counsel was ineffective by stipulating to his two prior convictions rather than requiring the State to call witnesses from Logan County to authenticate the judgments. The decision to stipulate to prior convictions may be sound trial strategy, avoiding testimony which further emphasized Appellant's prior record. See *State v. Blackburn*, 11th Dist. Trumbull No. 2001-T-0052, 2003-Ohio-605, ¶ 39. Further, Appellant has not demonstrated had counsel not entered the stipulation, the State would have been unable to prove the prior convictions and the result of the proceeding would have been different.

[*P33] Appellant argues counsel was ineffective for calling Detective Steve Welker as a witness and questioning him regarding his failure to obtain an interpreter before talking to N.D., who is hearing impaired. It appears counsel called Welker to attempt to demonstrate the police investigation and reports of the incident were incomplete. We have reviewed the testimony of Detective Welker and the entire transcript, and although Welker's testimony was not particularly helpful to Appellant's case, Appellant has not

demonstrated in the absence of Welker's testimony, the result of the proceeding would have been different.

[*P34] Appellant argues during the cross-examination of Detective Welker, counsel failed to object to speculative testimony. He argues without objection, Welker testified N.D. knew someone in another apartment heard Appellant yelling at her, but because the physical contact would not have been audible in another apartment, this witness would not have added anything the police did not already know. Tr. 252-253. Competent counsel may reasonably hesitate to object to potential errors in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial. *State v. Howell*, 5th Dist. Delaware No. 15 CAA 12 0098, 2016-Ohio-7749, ¶ 39, appeal not allowed, 150 Ohio St.3d 1409, 2017-Ohio-6964, 78 N.E.3d 909. Thus counsel's failure to object may have been sound trial strategy. Further, Appellant has not demonstrated in the absence of this testimony concerning an unknown possible witness, the result of the trial would have been different.

[*P35] Appellant argues counsel was ineffective in putting him on the witness stand. He argues his testimony allowed the prosecutor to cross-examine him concerning his prior convictions, as well as allegations in a pending case against Appellant involving N.D., and a prior case in which he was charged but not convicted.

[*P36] The advice provided by counsel to his or her client regarding the decision to testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." *State v. Winchester*, 8th Dist. Cuyahoga No. 79739, 2002-Ohio-2130, ¶ 12, citing *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (C.A.4, 1983), cert. denied, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984). See, also, *Jones v. Murray* (C.A.4, 1991), 947 F.2d 1106, 1116, fn. 6. Nonetheless, a claim for ineffective assistance of counsel may be successful if the record demonstrates the defendant's decision whether or not to testify was the result of coercion. *Id., citing Lema v. United States*, 987 F.2d 48, 52-53 (C.A.1, 1993). Nothing in the record suggests Appellant's decision to testify was the result of coercion. A defendant in a criminal case has the due process right to take the witness stand and to testify in his or her own defense. *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The record does not demonstrate Appellant did not choose to testify of his own free will, and he therefore cannot challenge his decision to testify as ineffective assistance of counsel.

[*P37] Finally, Appellant argues counsel was ineffective for failing to request jury instructions for the lesser-included offense of disorderly conduct or self-defense. As discussed in Appellant's second assignment of error earlier in this opinion, the evidence in the case did not support either instruction. Appellant has not demonstrated had counsel requested either instruction, the result of the proceeding would have been different.

[*P38] The third assignment of error is overruled.

*State v. Garrison*, 2018-Ohio-463.

The governing standard for ineffective assistance of trial counsel was adopted by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both

deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing*

*Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

> that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Garrison argues in his Petition that the *Strickland* standard is "highly arbitrary, capricious, and subjective," but that is the standard this Court must apply and against which it must judge the Fifth District's decision. Trial courts are obliged to follow precedent set by Supreme Court and Courts of Appeals. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982); *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987). If this case reaches the Supreme Court of the United States, Garrison will be free to argue to that court that it should change the *Strickland* standard.

Contrary to Garrison's argument, this Court's review of the ineffective assistance of trial counsel claims is not *de novo*. Rather, as Respondent has argued, our review must be doubly deferential, first to the decisions made by the attorney and then to the Fifth District's evaluation of those decisions.

> "Surmounting *Strickland*'s high bar is never an easy task." *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284,

297(2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; see also *Bell* v. *Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed. d 914 (2002); *Lockhart* v. *Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh* v. *Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [v. Mirzayance], 556 U.S., at 123, 129 S.Ct. 1411. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Court considers Garrison's sub-claims one by one as he argues them in the Traverse:

**1.     Failure to recite the reasonable doubt standard in voir dire or opening statement.**

The Fifth District did not evaluate whether this failure was deficient performance or not, but instead found there was no prejudice because the trial judge's instruction on reasonable doubt

correctly advised the jury of the State's burden of proof.  Garrison offers no proof that it was considered a mandatory practice for attorneys at the time of the trial to recite the beyond a reasonable doubt standard – he merely assumes it was part of counsel's duty.  He also offers no demonstration of prejudice in the face of the Fifth District's determination that the jury is presumed to have followed the trial judge's instructions in this regard.

### 2.    Failure to develop Phil Smith's testimony about bruising.

The Fifth District found that the record did not show what additional evidence Smith could have given if he had been examined further.  *Garrison*, 2018-Ohio-463, at ¶ 27.  Garrison responds by just repeating his point that Smith could have been shown qualified to say more.  The point he misses is that on direct appeal, the Ohio appellate courts are limited to the record made in the trial court.  In contrast, if a defendant wishes to show ineffective assistance of trial counsel based on evidence outside the record, he or she must do so by a petition for post-conviction relief, which Garrison never filed in this case.  Because he points to no place in the record on appeal that shows anything about what more Smith could have testified to regarding bruising, this Court must defer to the Fifth District on this sub-claim.

### 3, 5, and 6.    Faulty examination of Deputy Hamilton on bruising.

The Fifth District evaluated these claims by noting that the scope of cross-examination is a matter peculiarly within the tactical discretion of the trial attorney.  Garrison now says that his attorney should have objected to any testimony from Deputy Hamilton about the freshness of

N.D.'s bruises because he is not a medical professional (Traverse, ECF No. 14, PageID 695).  This argument displays the naiveté or at least optimistic hindsight that is often shown by those who have lost at trial.  Defense counsel could probably have obtained an admission from Deputy Hamilton that he was not a medical professional, although this is also not shown by the record.  But this line of questioning would have opened the door to Hamilton's testifying about his experience as police officer with observing bruising.  Since the jury would have known of Garrison and N.D.'s cohabitation and parenting of two children (implying cohabitation for some time), it might have been quite unhelpful to Garrison's case to have N.D.'s bruises identified as not fresh.  The point here is not to show how further questioning would have turned out, but to point out that Garrison has not shown how it would have turned out, which is the reason courts defer to the tactical decisions of trial counsel.

4.     **Failure to obtain a medical expert's evaluations of the photographs**

The Fifth District decided this claim by noting that the results of any such evaluation were, as appellate counsel conceded, speculative.  Again, Garrison disagrees without pointing to any evidence in the record to support his disagreement:  "A medical expert would have been able to testify with certainty of whether or not those bruises depicted in the photograph were 'fresh' or not based upon the inner workings of the human body and how bruises form and how they heal." (Traverse, ECF No. 14, PageID 696.)  There is no record evidence of what a doctor would have said or whether it would have been favorable or unfavorable to Garrison's case.  To prove a claim such as this on direct appeal requires showing evidence of record on appeal.  Otherwise such a claim must be presented in post-conviction with some actual evidence from a doctor, rather than

speculation about what a doctor would have said.

### 7.     Stipulation to Prior Convictions

Garrison's trial attorney stipulated that he had two prior convictions for domestic violence and he complained of this on appeal.  The Fifth District attributed this decision to sound trial strategy because otherwise there would have been a great deal more testimony aboard the prior convictions.  It would have been an easy matter to have the Clerk of Courts of Logan County authenticate the prior judgments, as the Fifth District held.  But at that point all the jury would have had would have been pieces of paper.  If counsel had refused to stipulate at that point that Garrison was the defendant in the prior cases, the State would have been able to put on the stand the victim or victims of the prior offenses.

Garrison argues this is a matter of stipulating to prior bad acts and these convictions would not have been admissible for that purpose under Ohio Revised Code § 2945.59 and Ohio R. Evid. 404(B)(Traverse, ECF No. 14, PageID 697-98).  That misses the point.  Garrison's Indictment carried the specification that he had prior convictions, making proof of those convictions admissible to prove the specification.  Under the circumstances, counsel's agreement to stipulate appears to have been very sound trial strategy.

### 8 and 9.     Calling Detective Welker to testify

The Fifth District found that Detective Welker's testimony was not particularly helpful to Garrison, but that he had shown no prejudice resulting from the testimony.  Garrison responds that

Welker "was a detective in a prior domestic violence case involving Garrison [and] testified that Garrison had essentially been convicted on prior occasions and escaped prosecution on another occasion."

Garrison's Traverse confuses portions of the Fifth District's decision by referring to both ¶ 34 and ¶ 35. Only ¶ 34 relates to testimony by Detective Welker and shows that he was called by the State and cross-examined by defense counsel. The Fifth District concluded, congruently with the experience of most trial judges, that juries do not particularly like attorney objections and may conclude the attorney is trying to hide something the jury would like to hear. The speculative testimony Welker gave was far from central to the case and so no objection was mandatory.

### 10. Calling Garrison to the stand to testify

Garrison claims it was ineffective assistance of trial counsel to have him testify. The Fifth District rejected this claim by noting that counsel's advice to a criminal defendant client about whether or not to testify "is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." *Garrison, supra*, ¶ 36. Garrison responds by claiming his trial attorney "coerced" him into testifying (Traverse, ECF No. 14). Certainly no such claim of coercion was before the Fifth District and Garrison points to nothing in the record to support this claim. In fact, we do not know what advice trial counsel gave Garrison about taking the stand as nothing about that advice appears of record.

It is certainly true that, having become a witness, Garrison was subject to cross-examination about prior felony convictions. It is for that reason that criminal defendants with prior convictions often do not take the stand. It is also true that the decision of a defendant to testify or

not is a protected right of client autonomy under the Sixth Amendment; because of a defendant's right to remain silent under the Fifth Amendment, he or she cannot be compelled to take the witness stand and the prosecutor is prohibited from commenting on the failure to a defendant to speak.

On the other hand, Garrison's own testimony about his interaction with N.D. was essential to establishing his own account of that interaction. Without his testimony, the jury would not have heard his claim that he never touched her or the evidence he relies on for his claim of self-defense.

All that the Fifth District knew from the record, and all this Court knows, is that Garrison did testify when he had an absolute right not to and it turned out badly for him, because the jury apparently did not believe him. These facts do not establish ineffective assistance of trial counsel; they do not show what advice counsel gave or what Garrison's reaction was to that advice.

## 11. Failure to request jury instructions on lesser included offenses and self-defense

Trial counsel did in fact fail to request jury instructions on lesser included offenses and self-defense. Whether this constituted ineffective assistance of trial counsel depends on whether Garrison would have been entitled those instructions if requested. Garrison makes no separate argument on this claim, but incorporates what he wrote on Ground Two (Traverse, ECF No. 14, PageID 701). No separate analysis is required here. Because the evidence did not support these instructions, it was not ineffective assistance of trial counsel to fail to request them.

## Ground Four: Insufficiency of the Evidence

Garrison pleads his Fourth Ground for Relief as follows:

**GROUND FOUR:** THE PETITIONER'S GUILTY VERDICT FOR DOMESTIC VIOLENCE DOES NOT MEET THE SUFFICIENCY OF THE EVIDENCE AND IS CONTRARY TO LAW.

**Supporting Facts:** Petitioner raised this issue on appeal, stating that his guilty verdict for domestic violence is against the manifest weight of the evidence and is contrary to law. Appellate Counsel indicated that the jury clearly lost their way and in doing so created a manifest miscarriage of justice that should reverse Petitioner's conviction and a new trial ordered.

The undersigned agrees that this Court would lack jurisdiction to consider this claim challenging the weight of the evidence because it raises a state-law issue that does not implicate federal constitutional concerns. The contents of Petitioner's ground were raised on direct appeal, in that they were argued as sufficiency-of-evidence even though they were characterized in summary to state "manifest weight of the evidence". Appellate Counsel did state that the resulting conviction is a manifest miscarriage of justice, which would waive any and all procedural defaults that may be asserted by the Respondent.

While there is a difference between "manifest weight of the evidence" and sufficiency-of-the evidence, appellate counsel on appeal incorporated a sufficiency of the evidence argument. Moreover, this ground includes an issue of due process, which is subject to review on the merits. Petitioner did not default the sufficiency-of-evidence claim that was raised to and considered bythe Ohio Court of Appeals. Petitioner referred to this issue in his memorandum in support of jurisdiction on further appeal to the Ohio Supreme Court, but due to the negligent and purposeful actions on behalf of Belmont Correctional Institution, this memorandum in support of jurisdiction was never filed because it was considered untimely.

Petitioner was convicted of Domestic Violence in violation of R.C. 29l9.25(A), despite the Ohio Court of Appeals for the Fifth District stating that Petitioner was convicted of R.C. 2929.25(A), which is a community control sanction statute.

R.C. 29l9.25(A) Domestic Violence is defined in Ohio as "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

> In the case *sub judice*, the alleged victim Nikki Dickinson
> [hereinafter, "Nikki"], had a prior conviction for domestic violence
> and falsification. Nikki testified that she was the aggressor, that she
> had punched Petitioner and grab [sic] his genitalia.
>
> The testimonies provided at trial are in direct contradiction to the
> physical evidence produced at trial. Additionally, as defined by
> statute - Petitioner did not knowingly cause of attempt to cause
> physical harm to Nikki. Nikki on the other hand did knowing [sic]
> cause physical harm to Petitioner.
>
> Petitioner did defend himself against the brunt of Nikki's attack,
> which inadvertently may have caused physical harm to Nikki,
> however as defined by statute, one must knowingly cause or attempt
> to cause ... and in only defending oneself, you don't knowingly cause
> physical harm even though it may be a byproduct.
>
> Petitioner was denied due process when he was convicted of
> Domestic Violence despite that the elements of the offense were not
> present.

(Petition, ECF No. 3, PageID 52.)

Respondent notes that a manifest weight of the evidence claim does not state a claim
cognizable under the Constitution and a sufficiency of the evidence claim is procedurally defaulted
because it was not presented to the Fifth District (Return, ECF No. 8, PageID 632). Further, even
as a sufficiency claim, Ground Four does not entitle Garrison to relief. *Id.*

Garrison responds by admitting that this claim was submitted to the Fifth District as a
manifest weight claim, but argues he has "recharacterized" it as a sufficiency of the evidence claim
here (Traverse, ECF No. 14, PageID 702). He relies on this Court's Report and Recommendations
in *Hughes v. Warden*, 2011 U.S. Dist. LEXIS 54131(S.D. Ohio Apr. 27, 2011), adopted, 2011 U.S.
Dist. LEXIS 54132 (S.D. Ohio May 20, 2011), which stated

> While *Nash* [*v. Eberlin* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS
> 29645 (6th Cir. Dec. 14, 2007)] is not a published opinion of the
> Sixth Circuit and therefore not binding precedent, the Magistrate
> Judge will follow it and (1) not find any procedural default from
> Hughes' limitation of his state court argument to manifest weight,

(2) liberally construe the Petition as making a claim of insufficiency of the evidence and (3) read the state court of appeals' decision that the conviction was not against the manifest weight of the evidence as "necessarily impl[ying] a finding that [Hughes'] conviction was also supported by sufficient evidence." *Id.* at 762.  See also *State v. Lee*, 158 Ohio App. 3d 129, 2004 Ohio 3946, 814 N.E.2d 112, 115 (Ohio App. 9th Dist. 2004), cited in *Nash* at 765.

*Hughes*, 2011 U.S. Dist. LEXIS 54131 at *12-13.

The Fifth District's opinion on Garrison's manifest weight claim is as follows:

[*P39] In his fourth assignment of error, Appellant argues the conviction is against the manifest weight of the evidence.

[*P40] In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1983).

[*P41] Appellant was convicted of domestic violence in violation of R.C. 2929.25(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

[*P42] Appellant argues the photographs were not good quality, and questions were raised concerning the freshness of the bruise on N.D.'s arm. He notes N.D. had prior convictions for domestic violence and falsification, and admitted to punching Appellant in the throat and grabbing his genitals. He takes issue with the lack of a deaf interpreter when police arrived on the scene and spoke to N.D., and with the failure of the police to also charge N.D. with domestic violence. He argues Hardy's testimony is not credible because she did not see N.D. punch or grab him, and the number of times he spit on N.D. was unclear from the testimony.

[*P43] N.D. and Hardy both testified Appellant spit on N.D., grabbed her arm, pushed her, and threw tea on her. N.D. testified the bruise on her arm was caused by Appellant. Hardy testified she saw Appellant grab N.D.'s arm in the same location as the bruise. Deputy

> Hamilton testified that in his recollection, the bruise was darker than it appeared in the photograph, and it appeared to be fresh. While Phil Smith testified he did not see the physical altercation between Appellant and N.D., Hardy testified he was not there when Appellant put his hands on N.D. Based on the testimony presented at trial, we do not find the jury lost its way in convicting Appellant of domestic violence, and the judgment is not against the manifest weight of the evidence.
>
> **[*P44]** The fourth assignment of error is overruled.

*Garrison*, 2018-Ohio-463.

Garrison argues there is insufficient evidence to prove the element of the domestic violence offense that N.D. was a family or household member.[2]  As the basis for this claim, Garrison argues that in another domestic violence case involving the same victim occurring on January 2, 2017, he was found not guilty.  Since the incident in this case occurred only sixty-one days earlier and there was no evidence of change in circumstances or living arrangements, he claims he is entitled to the same conclusion here (Traverse, ECF No. 14, PageID 705.)

The difficulty with this claim is that it was never presented to the state courts.  There is absolutely no mention at all in Garrison's brief on appeal of any issue over whether the victim was a family of household member (State Court Record, ECF No. 7, Ex. 8).  If he had done so, the Fifth District would have had to examine the record for proof of that fact, but he did not.  Because he never presented this claim at all to the Fifth District, it is procedurally defaulted and must be dismissed.

**Ground Five:  Lack of Due Process in Imposing Maximum Sentence**

Garrison pleads his Fifth Ground for Relief as follows:

---

[2] Note that in the supporting facts for Ground Two Garrison admits the cohabitation.

**GROUND FIVE:** THE TRIAL COURT ERRED WHEN IT IMPOSED THE MAXIMUM CONSECUTIVE SENTENCE OF THIRTY SIX [sic] MONTHS IN VIOLATION OF THE SIXTH AMENDMENT AS WELL AS DUE PROCESS VIOLATIONS ARISING FROM THE TRIAL COURT'S FAILURE TO AFFORD HIM THE REQUIRED PROTECTIONS OF OHIO LAW WHEN IMPOSING A MAXIMUM SENTENCE.

**Supporting Facts:** Petitioner was denied his Sixth Amendment rights and was denied due process when the trial court sentenced Garrison to an illegal sentence under Ohio law as his sentence constituted the maximum possible sentence for these convictions without the requisite findings by the trial court.

Ohio Revised Code 2953.08(G)(2) sets forth the standard of review for all felony sentences in Ohio. Under the code the appellate courts may increase, reduce or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.

At sentencing the trial court has a duty to consider the principles and purposes of sentencing, to essentially balance the factors as required by Ohio Revised Code 2929.11, 2929.12 and 2929.14 *prior* to imposing a consecutive sentence, in Petitioner's case, the trial court failed to do so. The trial court fails to perform this function even if they provide "lip service" by using the "magical words" when imposing sentence.

Garrison filed a direct appeal as to this issue. The Appellate Court entered into a fact finding expedition and was able to find that there are possible relevant factors to support the imposition of this sentence based on Petitioner's extensive criminal history and a history of probation violations. Nevertheless, this is a Due Process violation. The trial court is required to make these findings *prior* to imposing sentence, not after and certainly not by an appellate court. As a court speaks through a journal entry, these findings were not incorporated into the journal entry and thus never happened.

The record that was considered by the trial court does not support the sentencing court's findings, and the sentence is contrary to law. Petitioner has shown by clear and convincing evidence that the trial court erred and violated his Sixth Amendment rights as well as Due Process violations.

(Petition, ECF No. 3, PageID 55.)

The Warden argues Ground Five is not cognizable because it presents only a claim of state

law error (Return, ECF No. 8, PageID 639-40).  Garrison responds that although his appellate attorney argued this claim as an abuse of discretion, he raised federal constitutional issues when he appealed to the Ohio Supreme Court which did not rule on the merits of those claims (Traverse, ECF No. 14, PageID 708).  He also claims "there were violations or Due Process that stem from the trial court's not considering the principles and purposes of Ohio Revised Code 2929.11, 2929.12, 2929.13, and 2929.14 before imposing sentence as required."  *Id.*

The Magistrate Judge has put to one side the Respondent's procedural default defense applicable to all the Grounds for Relief and the Warden raises no such defense as to this claim. On direct appeal the Fifth District considered on the merits Garrison's claim that the trial court had not complied with Ohio law regarding felony sentencing and determined that the sentence was proper.  *State v. Garrison*, 2018-Ohio-463, ¶¶ 45-55.  As noted above with respect to Ground One, this habeas court does not sit to review claimed errors of state law.

Garrison claims that his asserted errors of state law also violated his due process rights. The Court treats this issue as preserved for decision on the merits because the Warden did not raise a fair presentation defense.  However, on the merits Garrison is not entitled to relief.  Not every process written into state law thereby becomes guaranteed as a matter of the Due Process Clause. Failure to abide by state law is not itself a constitutional violation.  *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985).  Violation by a State of its own procedural rules does not necessarily constitute a violation of due process.  *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976).  "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), cert. denied, 509 U.S. 907 (1993), overruled in part on other

grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995). Garrison points to no Supreme Court precedent that would make his sentencing unconstitutional.

Therefore Ground Five should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

August 1, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).