# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

STEPHEN M. GARRISON,

                    Petitioner,           :    Case No. 2:18-cv-1152

     - vs -                       Chief Judge Algenon L. Marbley
                                    Magistrate Judge Michael R. Merz

DAVID GRAY, Warden,
  Belmont Correctional Institution,

                                   :
                    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 30) to the Magistrate Judge's Substituted Report and Recommendations (ECF No. 25). Chief Judge Marbley has recommitted the case for reconsideration in light of the Objections (ECF No. 31).

**Ground One: Improper Admission of Photographs**

In his First Ground for Relief, Garrison asserted he was denied due process and a fair trial by the admission of five photographs of the victim taken by Deputy Sheriff Hamilton. The Substituted Report reached the merits of the constitutional claims and found that the decision of the Fifth District Court of Appeals on direct appeal was not an objectively unreasonable application of Supreme Court precedent (ECF No. 24, PageID 947).

In his Objections, Garrison acknowledges that, to overcome this finding, he must show that the Fifth District's "decision is contrary to, or involved an unreasonable application of clearly

established federal law as determined by the United States Supreme Court" (ECF No. 30, PageID 998.) Having recited generally applicable law, Garrison argues: "This court is able to review the evidentiary ruling of the trial court for consistency with Due Process." *Id.* at PageID 999. To the contrary, habeas corpus review looks to the last reasoned state court decision on an issue. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). In this case, it is the decision of the Fifth District Court of Appeals, and not that of the trial court, the Common Pleas Court of Muskingum County.

In deciding this claim on appeal, the Fifth District stated the Ohio rule that even improper admission of evidence does not constitute reversible error unless a defendant is prejudiced. *State v. Garrison,* 2018-Ohio-463 ¶ 14 (5th Dist. Fed. 2, 2018), citing *State v. Barnes*, 94 Ohio St. 3d 21 (2002). It held, "Assuming arguendo admission of the photographs was error, Appellant has not demonstrated prejudice from their admission." *Id.* The appeals court went on to decide that there was no prejudice demonstrated because Deputy Hamilton testified the victim's injuries as shown in the photographs were less severe than he observed in person. *Id.* The Substituted Repot accepted this conclusion, but Garrison argues he was prejudiced because the photographs were irrelevant (Objections, ECF No. 30, PageID 1002).

Garrison now argues the Fifth District "did not decide the merits of this federal constitutional claim," to wit, admission of the photographs denied him due process and fair trial." *Id.* at PageID 1003. Thus, he says this Court should not defer to that court's decision. *Id.* But Garrison's merit brief on appeal mentions nothing about due process or a fair trial. Instead, he argued about the admission of the photographs entirely in terms of Ohio law (State Court Record, ECF No. 7, PageID 84). This Court could therefore readily find that Garrison procedurally defaulted his First Ground for Relief by not fairly presenting it to the Ohio courts as a federal constitutional claim. Although Respondent defended this claim on the merits and did not raise a

procedural default defense, this Court is entitled to do so *sua sponte*. *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002)(§ 2254 capital case)*; White v. Mitchell,* 431 F.3d 517, 514 (6th Cir. 2005)(capital case); *Elzy v. United States,* 205 F.3d 882 (6th Cir. 2000)(§ 2255 case). *See also*, *Trest v. Cain*, 522 U.S. 87, 89 (1997)(denying knowledge "of any precedent stating that a habeas court must raise [the procedural default] matter where the State itself does not do so," and leaving open the question whether and under what circumstances habeas courts might do so).

There is no merit at all to Garrison's claim that the photographs are irrelevant. They were authenticated as copies of photographs taken by the investigating detective who himself testified to the injuries he observed.


**Ground Two: Failure to Instruct on Disorderly Conduct as a Lesser-Included Offense or on Self-Defense**

In his Second Ground for Relief, Garrison complains that the trial court failed to give a lesser-included offense instruction or a self-defense instruction to the jury. Respondent asserted Garrison had procedurally defaulted this claim by failing to object to the instructions in the trial court. The Substituted Report upheld that procedural default defense, applying the standard for procedural default adopted by the Sixth Circuit in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)(Substituted Report, ECF No. 25, PageID 951-56). Alternatively, the Substituted Report found Ground Two to be without merit because the Supreme Court has never held the Constitution requires giving a lesser-included offense instruction in a non-capital case. *Id.* at PageID 956. As to self-defense, the Fifth District determined that the evidence did not warrant such an instruction because Garrison testified he did not touch the victim. *Id.* at PageID 957.

In his Objections, Garrison claims he can show cause and prejudice to excuse the procedural default, to wit, the ineffective assistance of his trial counsel in failing to object (ECF No. 30, PageID 1009). That claim fails. The Fifth District's conclusion that the claim is without merit shows it was not ineffective assistance of trial counsel to fail to raise it, given the twin requirements to show deficient performance and resulting prejudice under *Strickland v. Washington,* 466 U.S. 668 (1984).

In objecting to the Substituted Report's conclusion that the Supreme Court has never held a lesser-included instruction is constitutionally required, Garrison responds, "The Supreme Court is silent as to this issue. . . . [T]here is also no Supreme Court ruling that unequivocally states that the constitution does not provide this protection." (Objections, ECF No. 30, PageID 1011). He concludes that this is a case that would require the Supreme Court to pronounce on the question. *Id.* at PageID 1012. But that misstates this Court's authority. We have authority to grant the writ of habeas corpus only if the constitutional right in question had already been recognized by the Supreme Court as of the time of a petitioner's state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

**Ground Three: Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Garrison raised eleven claims of ineffective assistance of trial counsel. The Substituted Report concluded this Court should defer to the Fifth District's decision on these claims. That court had applied the correct constitutional standard from *Strickland v. Washington*, 466 U.S. 668 (1974), and its application was not objectively unreasonable (Substituted Report, ECF No. 25, PageID 960-71). Garrison objects as to each sub-

claim in turn.

**1. Failure to recite the reasonable doubt standard in voir dire or opening statement.**

Garrison claimed he received ineffective assistance of trial counsel when his trial attorney did not recite the reasonable doubt standard in voir dire or opening statement. The Fifth District evaluated only the prejudice prong of *Strickland* in considering this claim. The Substituted Report recommended deference to the Ohio court because Garrison had shown neither deficient performance nor prejudice (ECF No. 25, PageID 966-67).

In his Objections, Garrison argues that *Strickland* requires a state court to decide both prongs (ECF No. 30, PageID 1013-14). That is incorrect. *Strickland* itself allows a court to decide the prejudice prong first or indeed alone:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

466 U.S. at 697.

Garrison's Objections make no showing on either *Strickland* prong, but merely reassert the claim in conclusory language. (Objections, ECF No. 30, PageID 1014.)

**2. Failure to develop Phil Smith's testimony about bruising.**

The Objections do not require further analysis of this sub-claim.

**3, 5, and 6. Faulty examination of Deputy Hamilton on bruising.**

The Fifth District found no deficient performance in the cross-examination of Deputy Hamilton noting that the scope of cross-examination is peculiarly within the discretion of a trial attorney. The Substituted Report concluded this decision was entitled to deference.

The Objections speculate that if trial counsel had inquired further about the bruising – for example, how fresh it was – he could have shown it resulted from some other cause than the domestic violence: "[I]t could be the result of an automobile accident, a slip or fall, etc., etc." (ECF No. 30, PageID 1016.) But Garrison offers no proof of what the answer would have been, much less that it would have been supportive of his case. That is, he has not shown prejudice from failure to ask the question.

**4. Failure to obtain a medical expert's evaluations of the photographs**

The Objections require no further analysis of this sub-claim. Garrison's speculations about what a doctor would have testified to remain just that – speculations.

**7. Stipulation to Prior Convictions**

Garrison's two prior convictions for domestic violence were admissible to prove the specification in the indictment that he had prior convictions, an element of the case. The Fifth District attributed counsel's stipulation to these to sound trial strategy – not dragging out the proof of the prior convictions which could not have helped Garrison's case. The Substituted Report agreed.

In his Objections, Garrison questions the constitutionality of enhanced punishment for having prior convictions. Objections, ECF No. 30, PageID 1017-18. But the Supreme Court has repeatedly upheld enhanced punishment for recidivism. For example, in *Rummel v. Estelle,* 445 U.S. 263 (1980), the Court refused to strike down a sentence of life imprisonment, with possibility of parole, for recidivism based on three underlying felonies. More recently, the Supreme Court has explained that "three strikes laws . . . share a common goal of protecting the public safety by providing lengthy prison terms for habitual felons. *Ewing v.California*, 538 U.S. 11, 15 (2003). There is nothing unconstitutional about punishing recidivism which must be proved by admitting evidence of the prior convictions.

**8 and 9. Calling Detective Welker to testify**

Detective Welker was called as a prosecution witness. Garrison's eighth and ninth sub-claims assert his trial attorney provided ineffective assistance of trial counsel by not objecting to certain testimony. The Fifth District found no prejudice from the testimony and therefore no deficient performance from failure to object; the Substituted Report agreed. The Objections do

not require further analysis on these sub-claims.

**10. Calling Garrison to the stand to testify**

Garrison's tenth sub-claim is that he received ineffective assistance of trial counsel when his attorney "coerced" him into testifying. The record contains no evidence of what advice his attorney gave Garrison about testifying. Certainly without that testimony he could not have provided the evidence on which he relies for his claim of self-defense.

In his Objections, Garrison admits that none of the attorney's advice is of record but says this Court could hold an evidentiary hearing to add to the record. Such a hearing is prohibited by *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)(holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits). Moreover, Garrison has defaulted on his opportunity to add this evidence to the record by failure to file a petition for post-conviction relief in the state court under Ohio Revised Code § 2953.21. That remedy is specifically designed to add to the state court record relevant facts relating to constitutional violations which did not appear in the direct appeal record.

**11. Failure to request jury instructions on lesser-included offenses and self-defense**

The Objections do not require further analysis of this sub-claim.

**Ground Four:  Insufficiency of the Evidence**

The gravamen of this claim is that because Garrison was acquitted in another domestic violence case with the same victim because it was shown in that case that she was not a family or household member.  The Substituted Report recommended denying this claim because it was never presented to the state courts (ECF No. 25, PageID 975).  Moreover, the fact that the State failed to prove an essential element of the crime in one case against Garrison does not prove it failed to do so in an entirely different case.

**Ground Five: Lack of Due Process in Imposing Maximum Sentence**

In his Fifth Ground for Relief, Garrison claimed the imposition of a maximum thirty-six-month sentence violated both the Sixth and Fourteenth Amendments.  In particular he claimed due process violations stemming from the trial court's "not considering the principles and purposes of Ohio Revised Code 2929.11, 2929.12, 2929.13, and 2929.14 before imposing sentence as required."  (Traverse, ECF No. 14, PageID 708.)

The Substituted Report rejected this claim on the ground that the Due Process Clause does not constitutionalize every state court procedure (ECF No. 25, PageID 977, citing *Roberts v. City of Troy*, 773 F.2d 720, 726 (6th Cir. 1985); *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976); and *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), cert. denied, 509 U.S. 907 (1993).

In his Objections, Garrison relies on *Matthews v. Eldridge*, 424 U.S. 319 (1976), where the Court held

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors:  first, the private interest that will be affected by the official action;  second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334-35.  *Matthews* remains binding precedent, but it does not authorize a habeas corpus court to find new due process violations in the first instance.   Rather, we can only find a violation of Due Process rights if the right has been clearly established by the Supreme Court in case law that speaks to the particular issue in a case.  The Supreme Court has never held that a trial court violates the Due Process Clause when it fails to follow a state procedure, even one mandated by statute, for determining when a maximum sentence or a consecutive sentence may be imposed.

> Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate "fundamental fairness" very narrowly. As we observed in *[United States v.] Lovasco,* [431 U.S. 783, 97 S.Ct. 2044,] 2048, 52 L.Ed.2d 752 (1977).

> 'Judges are not free, in defining due process, to impose on law enforcement officials [their] personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. *Rochin v.California*, 342 U.S. 165, 170, 782 S.Ct. 205, 208, 906 L.Ed. 183 (1952). . . .  [They] are to determine only whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed 791 (1935), and which define the community's sense of fair play and decency, *Rochin v. California*, *supra*, at 173, 72 D.Ct., at 210.'

*Dowling v. United States*, 493 U.S. 342, 352-53 (1990)(some internal quotation marks omitted).

**Procedural Objection**

Garrison also objects "to the Magistrate Judge's denial of a Petitioner's Motion for Extension of Time requests." (ECF No. 30, PageID 1026).

The Substituted Report and Recommendations was filed and served on August 1, 2019. Under Fed.R.Civ.P. 72, Petitioner's objections were due seventeen days later, as he was notified (ECF No. 25, PageID 978). On August 9, 2019, Garrison moved for an extension of time such that his objections would be due on October 1, 2019 (ECF No. 26). In addition to mentioning that he had limited law library access and was proceeding *pro se*, he noted that he had another habeas corpus case pending in this Court arising out of a different domestic violence conviction with the same victim.

Instead of extending the time to October 1, the Magistrate Judge extended it to September 15 (ECF No. 27). On August 30, 2019, Garrison sought an extension to October 15, 2019 (ECF No. 28). The Magistrate Judge denied this further extension, noting in part Petitioner claims the six weeks provided for objecting is "burdensome." (ECF No. 30, PageID 1026.) In fact, it is thirty days more than the time provided by the Rules and is no more burdensome to Petitioner than to any other incarcerated litigant (ECF No. 29, PageID 992). As part of the reason for denying a further extension, the Magistrate Judge noted:

> Part of the reason for denying additional time is that it seems to result in extremely prolix filings by Petitioner. His Reply in this case is 149 pages long (ECF No. 14). In his other habeas corpus case, 2:18-cv-1153, his Reply was 137 pages long, including eighty-six pages of single-spaced endnotes consisting entirely of case law citations largely inapplicable to the case. In the instant case the parallel set of endnotes, similarly formatted, is eight-seven pages long. Both sets of endnotes appear to have been copied and pasted from the work cited at the end, Habeas Corpus Practice and

> Procedure by Hertz and Liebman (see PageID 796). This practice is
> completely useless to the Court.

*Id.* In his Objections, Garrison does not deny that his Replies in the two cases contain nearly one hundred pages each of single-spaced copied and pasted material from the Hertz and Liebman treatise. Nor does he suggest how that could in fact be at all useful to the Court in deciding his cases. He further complains that the Court has not ordered the Warden to accommodate his financial situation, essentially by advancing him money against his state pay and has not ordered the Clerk to provide him with a prepaid postage envelope to mail his documents to the Court (Objections, ECF No. 30, PageID 1027).

When Magistrate Judge Jolson ordered an answer in this case, she allowed Garrison twenty-one days after the Return of Writ to file his traverse/reply (ECF No. 2). When the Return was filed, Garrison sought and received a sixty-day extension of that time (ECF Nos. 9 and 10). When that time had almost run, he sought and was granted another forty-five days (ECF Nos 11, 12).

Considering the record as a whole, Garrison has had ample time to present his arguments. Moreover he has not been subject to any limitations on his filing which are not common to other prison inmates proceeding *pro se* in this Court.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the

Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 1, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).